1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANNY L. MCKAY,

               Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

               Defendant.

CASE NO.     C07-5334BHS-KLS

REPORT AND
RECOMMENDATION

Noted for May 2, 2008

Plaintiff, Danny L. McKay, has brought this matter for judicial review of the denial of his

application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate

Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by

Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the

remaining record, the undersigned submits the following Report and Recommendation for the Honorable

Benjamin H. Settle's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 62 years old.[1]  Tr. 30.  He has a high school education and past work

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to
Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

experience as a truck driver, retail store manager and dispatcher. Tr. 20, 59, 64, 67.

On February 11, 2004, plaintiff filed an application for disability insurance benefits, alleging disability as of July 14, 1999, due to lower back pain and right leg numbness. Tr. 15, 44-46, 58.  His application was denied initially and on reconsideration. Tr. 15, 30-32, 36.  A hearing was held before an administrative law judge ("ALJ") on September 21, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 233-50.

On September 25, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1)    at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability through December 31, 2002, his date last insured;

(2)    at step two, through his date last insured, plaintiff had "severe" impairments consisting of degenerative disc disease with spondylosis in his lumbar spine and radiculopathy in his right leg;

(3)    at step three, through his date last insured, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

(4)    at step four, through his date last insured, plaintiff had the residual functional capacity to perform light work, with certain other non-exertional limitations, which did not preclude him from performing his past relevant work.

Tr. 15-21. Plaintiff's request for review was denied by the Appeals Council on May 18, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 3; 20 C.F.R. § 404.981.

On July 10, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1).  The administrative record was filed with the Court on September 24, 2007. (Dkt. #9).  Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

(a)    the ALJ erred in evaluating the medical evidence in the record;

(b)    the ALJ erred in failing to find that plaintiff's impairments met or equaled the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A;

(c)    the ALJ erred in assessing plaintiff's credibility;

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

1      (d)     the ALJ erred in assessing plaintiff's residual functional capacity;

2      (e)     the ALJ failed to meet his burden of showing plaintiff is capable of performing
               other work existing in significant numbers in the national economy; and
3
       (f)     the ALJ erred in failing to obtain the testimony of a medical expert regarding
4              plaintiff's onset date of disability.

5   The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set

6   forth below, recommends that while the ALJ's decision should be reversed, this matter should be

7   remanded to the Commissioner for further administrative proceedings.  Although plaintiff requests oral

8   argument in this matter, the undersigned finds such argument to be unnecessary here.

9                                               DISCUSSION

10          This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

11  Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole

12  to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

13  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson

14  v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

15  a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

16  1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

17  one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749

18  F.2d 577, 579 (9th Cir. 1984).

19  I.      Plaintiff's Date Last Insured

20          To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed

21  on or before" the date his insured status expired.  Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see

22  also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security

23  statutory scheme requires disability to be continuously disabling from time of onset during insured status

24  to time of application for benefits, if individual applies for benefits for current disability after expiration of

25  insured status).  As noted above, plaintiff's date last insured was December 31, 2002. Tr. 15.  Therefore, to

26  be entitled to disability insurance benefits, plaintiff must establish he was disabled prior to or as of that

27  date. Tidwell, 161 F.3d at 601.

28

1    II.    <u>The ALJ's Evaluation of the Medical Evidence in the Record</u>

2          The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

3    medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in

4    the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions

5    of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion

6    must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th

7    Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact

8    inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

9    "falls within this responsibility." <u>Id.</u> at 603.

10         In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

11   supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a

12   detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

13   thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the

14   evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences

15   from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

16         The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

17   either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

18   treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific

19   and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However,

20   the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>,

21   739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only

22   explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d

23   700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

24         In general, more weight is given to a treating physician's opinion than to the opinions of those who

25   do not treat the claimant. <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

26   a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings"

27   or "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190,

28   1195 (9th Cir.,2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242

F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff argues the ALJ failed to discuss much of the medical evidence in the record that supports his disability claim.  Specifically, plaintiff argues this evidence constituted significant probative evidence that the ALJ was required to address.  The undersigned disagrees.  Plaintiff first points to clinical findings made by Thomas Jay Rosenbaum, M.D., in early October 2000, that straight leg raising caused low back pain on the right side and that plaintiff exhibited decreased sensation in his right foot and calf. Tr. 102. Plaintiff also notes that Dr. Rosenbaum diagnosed him at the time with lumbar spondylosis, finding him "capable of returning to [the] work force in an occupation, which" did "not require heavy bending, lifting, twisting," and which allowed for "postural changes." Tr. 102-03.  The ALJ, however, did at least in general reference that portion of the record containing these findings. Tr. 17.

Positive straight leg and decreased sensation findings, furthermore, do not by themselves constitute significantly probative evidence of disability, let alone work-related limitations.  That is, the mere fact that a claimant may suffer from pain or other physical or mental symptoms is not, without at least some stated connection in the medical evaluation or report to specific work-related functions, necessarily of particular relevance to a disability determination.  In addition, the limitations Dr. Rosenbaum did find plaintiff had – which also included a 35-pound non-repetitive lifting restriction (Tr. 103) – are entirely consistent with the residual functional capacity ("RFC") with which the ALJ assessed plaintiff:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work.  He was able to lift and/or carry a maximum of 25 pounds.  He was able to sit, stand and/or walk for 1 hour at any given time, not to exceed 4 hours in a fulltime [sic] 8-hour workday.  He required a sit/stand option at will.  He was not able to crawl.  He was limited to only occasional crouching, bending, kneeling, squatting and twisting.

Tr. 18.  None of the limitations mentioned by Dr. Rosenbaum in early October 2000, are more severe than those adopted by the ALJ in the above assessment.  Dr. Rosenbaum, furthermore, just two weeks earlier had made further work-related functional findings that also largely are in line with those made by the ALJ. Tr. 153-55.

Plaintiff next argues the ALJ erred in failing to discuss plaintiff's self-report to Joseph E. Badolato,

D.O., in late January 2003, that he was "having more tingling down his right leg now and severe pain," and Dr. Badolato's finding that plaintiff had reduced flexion and "difficulty getting up an down from the exam table." Tr. 160. Plaintiff's own report, however, is not a medical finding, and thus by definition cannot be said to be Dr. Badolato's own clinical finding. Again, the mere presence of pain and reduced flexion is not necessarily evidence of significant or disabling work-related limitations. In addition, while the difficulty in getting up and down from the exam table plaintiff demonstrated is more indicative of actual work-related functioning, once more that finding is not inconsistent with the postural limitations the ALJ adopted in his residual functional capacity assessment.

In mid-April 2003, Robert S. Djergaian, M.D., related that plaintiff had reported the following:

> He is not sleeping well. He gets up and down all night. He describes sharp shooting pains in his back and down his right leg. The leg pain also has a numb and pins and needles quality. He rates the pain as 3-4/10 on a visual analog scale and six months ago it was 3/10.

Tr. 186. Again, this is merely plaintiff's own self-report and does not constitute objective medical findings made by Dr. Djergaian. As such, the ALJ did not have to discuss them in this context. Plaintiff also notes the following objective findings Dr. Djergaian did make:

> He can forward flex but does have pain with extension. He has some back pain with straight leg raising in both the seated and supine position. . . . He has some altered sensation in the lateral aspect of his right calf.

Tr. 187. Here too, though, as above these findings fail to establish any particular work-related limitations for consideration by the ALJ in his disability determination. The undersigned further notes that plaintiff fails to point to the many normal findings Dr. Djergaian also made, such as "no real muscle spasm," lack of pain on rotation of the hips, no true muscle weakness, and normal gait. Id.

More importantly, however, the undersigned finds the ALJ did address the medical evidence in the record provided by Dr. Djergaian, and did so adequately. Specifically, with respect to the same mid-April findings, the ALJ noted that Dr. Djergaian also had found plaintiff to be "overweight and deconditioned." Tr. 19, 187. The ALJ further noted that while Dr. Djergaian observed a worsening in plaintiff's condition between April 2003, and September 2003, this was after the date last insured. Tr. 19; Flaten , 44 F.3d at 1461 n.4 (finding any deterioration in claimant's condition subsequent to expiration of insured status is

irrelevant).[3]  In addition, also as noted by the ALJ, in early October 2003, Dr. Djergaian had "no reason to say" that plaintiff could not work, though he did not think at the time that he could be back to his regular job as a truck driver, which, again, is consistent with the ALJ's residual functional capacity and step four findings in this matter. Tr. 18, 20, 183.

Plaintiff's arguments concerning other following findings provided by Dr. Djergaian are similarly without merit:

> . . . On April 16, 2003, Dr. Djergaian suggested that a CT myelogram be done to evaluate the etiology of Mr. McKay's radiculopathic pain . . .

> . . . On December 23, 2003, Dr. Djergaian again suggested performing a lumbar myelogram, "which could potentially pick up nerve impingement not seen on MRI." . . .

> . . . On February, 2004, Dr. Djergaian wrote that Mr. McKay was complaining that Neurontin was making him feel spacy [sic], dizzy, and lethargic, and he was also having bad dreams. . . .

> . . . On March 3, 2004, Dr. Djergaian wrote that after Mr. McKay stopped his Neurontin, he felt less dizzy and less lethargic, but he had some increase in shooting pain.  Dr. Djergaian also wrote: "He is still getting up at night secondary to pain." . . .

(Dkt. #11, p. 10); see also Tr. 177-78, 181, 187.  The suggestion that further electrodiagnostic studies be performed is not evidence of a work-related limitation.  Once more, plaintiff's own self-reports also do not constitute Dr. Djergaian's objective clinical findings, and therefore need not be addressed by the ALJ in evaluating the medical evidence in the record.

Plaintiff argues the ALJ erred as well in failing to address the following medical opinion provided by Darrell C. Brett, M.D., in mid-March 2005:

> Mr. McKay returns today with increasing pain in his low back and right leg with progressive weakness and now quite marked dipping of the right foot on attempting to heel walk.  Excquisite nerve root irritation signs are present, and I encouraged him to proceed promptly with lumbar myelogram to determine the areas and extent of nerve impingement. . . .
> He is totally disabled at this time and is unable to be gainfully employed.

Tr. 210.  Again, plaintiff's own self-reports do not constitute objective medical evidence, nor are signs of nerve root impingement alone or a suggestion that further electrodiagnostic be sought evidence of

---

[3]Medical findings regarding such subsequent deterioration are distinguishable from "retrospective" medical observations "made after the period for disability," which "are relevant to assess the claimant's disability" during that period. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988); see also Flaten, 44 F.3d at 1462 (claimants who apply for benefits for current disability after expiration of their insured status will be entitled to them only if they can prove current disability has existed continuously since date on or prior to date insurance coverage lapsed).

disability or work-related limitations, significant or otherwise.

As to Dr. Brett's disability opinion, contrary to plaintiff's assertion, the ALJ did address it, stating specifically as follows:

> The record reflects the claimant's impairments have worsened since December 31, 2002, his date last insured.  The claimant's treating and evaluating physician reported an increase in pain and reduced functionality. (Exhibit 5F/85-95).  These observations are confirmed by radiology results. (Exhibit 8F/112).  In addition, his treating physician, Dr. Brett, opined he was unable to perform work activity in March 2005. (Exhibit 8F/113).

Tr. 17.  The ALJ then went on to state that:

> As discussed above, the record reflects the claimant's impairments worsened after his date last insured.  His treatment history indicates that his symptoms and limitations increased after his date last insured.  Accordingly, there is insufficient evidence in the record to show the claimant was precluded from performing work activity prior to the date last insured.

Tr. 19.  Although the ALJ did not expressly state so, clearly he declined to adopt Dr. Brett's opinion as to plaintiff's disability on the basis that it evidenced a worsening of plaintiff's condition that occurred after his date last insured.   As noted above with respect to Dr. Djergaian's 2003 findings, this is a valid reason for rejecting Dr. Brett's disability opinion as well. Flaten, 44 F.3d at 1461 n.4 (9th Cir. 1995) (deterioration in claimant's condition subsequent to expiration of insured status irrelevant).

Plaintiff further argues the ALJ should have discussed two electrodiagnostic studies performed in late March 2005, which showed multiple "[m]ild disc bulges" in plaintiff's spine, a "very slightly posteriorly displaced" spinal nerve and an "[e]xtradural defect." Tr. 211-14.  As previously explained, such findings in themselves are insufficient to establish the presence of work-related limitations, disabling or otherwise.  In addition, these studies were performed well after plaintiff's insured status expired, and thus their relevance as to plaintiff's condition prior thereto are questionable at best.  Lastly, plaintiff faults the ALJ for crediting plaintiff's chiropractor as having signed several work releases he rejected.  While it is true that the releases instead were completed by Dr. Badolato (see Tr. 18, 126, 172), the ALJ's other stated reason for rejecting them, is nevertheless, still valid:

> These releases were only for a total duration of several months; and therefore, fail to indicate a continuous period of disability for 12 months or more.

Tr. 18; See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be

1  expected to last for continuous period of not less than twelve months).

2  III.     The ALJ's Step Three Analysis Was Improper

3       At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's

4  impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P,

5  Appendix 1 (the "Listings"). 20 C.F.R § 404.1520(d); Tackett , 180 F.3d at 1098.  If any of the claimant's

6  impairments meet or equal a listed impairment, he or she is deemed disabled. Id.  The burden of proof is

7  on the claimant to establish he or she meets or equals any of the impairments in the Listings. Tacket, 180

8  F.3d at 1098.

9       A mental or physical impairment "must result from anatomical, physiological, or psychological

10 abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."

11 20 C.F.R. § 404.1508.  It must be established by medical evidence "consisting of signs, symptoms, and

12 laboratory findings." Id.  An impairment meets a listed impairment "only when it manifests the specific

13 findings described in the set of medical criteria for that listed impairment." Social Security Ruling ("SSR")

14 83-19, 1983 WL 31248 *2.  An impairment equals a listed impairment "only if the medical findings

15 (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set

16 of medical findings for the listed impairment." Id. at *2.  However, "symptoms alone" will not justify a

17 finding of equivalence. Id.

18      As noted above, the ALJ found that "[t]hrough the date last insured, the claimant did not have an

19 impairment or combination of impairments that met or medically equaled the criteria of" any of those in

20 the Listings. Tr. 18.  The ALJ further specifically found as follows:

21         Through the date last insured the claimant's degenerative disc disease with spondylosis
           in his lumbar spine and radiculopathy in his right leg failed to meet or medically equal
22         the criteria of a Listing.  The claimant's treatment record does not contain the clinical
           and diagnostic findings necessary to meet or medically equal the criteria of any of the
23         applicable Listings for impairments affecting the musculoskeletal system (1.0) or any
           other section of Appendix 1.
24
   Tr. 18.  Plaintiff argues the ALJ erred by failing to adequately explain why his impairments did not meet
25
   or equal the criteria contained in Listing 1.04A.  While it does appear the ALJ failed to do so, the
26
   undersigned disagrees that the record necessarily establishes those criteria have been met or equaled here.
27
        It is true, as defendant asserts, that an ALJ need not "state why a claimant failed to satisfy every
28
   different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990)

1  (finding that ALJ did not err in failing to state what evidence supported conclusion that, or to discuss why,

2  claimant's impairments did not meet or exceed Listings).  An ALJ, however, "must evaluate the relevant

3  evidence before concluding that a claimant's impairments do not meet or equal a listed impairment."

4  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  Thus, a mere "boilerplate finding is insufficient to

5  support a conclusion that a claimant's impairment does not do so."  Id.  The ALJ's above findings fail to

6  contain any discussion of the relevant evidence in the record – of which, as discussed below, there is much

7  – and thus its fairly conclusory statements are more boilerplate than not.

8      Listing 1.04A requires that the following criteria be met:

9  . . . Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal
   stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),
10  resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
   With:
11
   A. Evidence of nerve root compression characterized by neuro-anatomic distribution of
12  pain, limitation of motion of the spine, motor loss (atrophy with associated muscle
   weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is
13  involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .

14  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

15      The record in this case reveals that prior to his date last insured, plaintiff had been diagnosed with a

16  variety of spinal conditions, including lumbosacral dysfunction/degeneration, a right nerve root injury, a

17  herniated disk, right lumbar radiculopathy, and lumbar spondylosis. Tr. 107, 119, 171, 173, 205.  Indeed,

18  the ALJ himself found that through his date last insured, plaintiff had severe impairments consisting of

19  "degenerative disc disease with spondylosis in his lumbar spine and radiculopathy in his right leg." Tr. 17.

20  Thus, the undersigned finds that prior to his date last insured, plaintiff met the first required criteria for

21  Listing 1.04A, that he have a disorder of the spine.  The undersigned further finds that substantial evidence

22  in the record shows there was nerve root compromise characterized by neuro-anatomic distribution of pain.

23  See Tr. 107, 109, 119, 163, 165-69, 171, 173, 205.

24      It is questionable, however, whether plaintiff exhibited the requisite motor loss, sensory or reflex

25  loss and positive straight leg findings.  An examination performed by Douglas A. Thompson, M.D., in late

26  January 2000, found plaintiff had "full strength" and "no sensory loss" in his lower extremities, and his

27  straight leg raising was negative. Tr. 205.  Dr. Badolato produced negative straight leg raising in late May

28  2000, and again in late June 2000, though there was evidence of diminished right knee reflex at that time.

Tr. 169.  Right Achilles reflex loss was noted by Dr. Badolato as well in late July 2000, and right thigh sensation was "a bit decreased" in late August 2000, and the same was noted in the right thigh and calf in late September 2000. Tr. 166-68.  There continued to be evidence of decreased sensation in the right thigh through early November 2001, although Dr. Badolato did note that plaintiff's reflexes also remained intact during that period. Tr. 162-65.

In late May 2000, Dr. Rosenbaum tested plaintiff's motor strength as being normal. Tr. 119.  There was right leg pain with straight leg raising, however, and "decreased touch perception" in plaintiff's right calf. Id.  Plaintiff's motor strength again was found by Dr. Rosenbaum to be normal in early October 2000, again with right leg pain on straight leg raising and decreased right calf and foot sensation. Tr. 102.  Thus, while it does seem that there is evidence in the record of loss of sensation and positive signs on straight leg raising, plaintiff's motor strength was intact and his reflexes were largely normal.  Accordingly, although it appears plaintiff likely has not met all the criteria of Listing 1.04A here, as discussed above, the ALJ gave no discussion in this regard, and thus the undersigned is unable to deduce the actual basis for his step three determination.  Plaintiff argues the evidence in the record supports a finding of medical equivalence. For the same reasons, however, the undersigned declines to so find at this time.

IV.      The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

1   <u>Lester</u>, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. <u>O'Donnell v.</u>

2   <u>Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

3        In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

4   evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

5   testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

6   also may consider a claimant's work record and observations of physicians and other third parties

7   regarding the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

8        Here, the ALJ discounted plaintiff's credibility in part due to his activities of daily living, finding

9   specifically that:

10       The claimant's activities of daily living involve watching television and reading.  He is
11       able to perform housework such as: washing dishes, laundry, cleaning and cooking.  He
         is able to complete yard work.  He possesses a valid driver's license and is able to
12       conduct household errands. (Exhibit 4E). . . .

13       . . . As discussed above, his daily activities are quite involved.  He is able to perform
         housework and works in the yard.  He also is able to complete household errands.
         Therefore, the claimant's daily activities suggest a level of functioning much greater
14       than the one described in the claimant's application and testimony.

15   Tr. 19.  Plaintiff argues this is not a valid reason for rejecting his credibility.  The undersigned agrees.

16       To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her

17   daily activities. <u>Smolen</u>, 80 F.3d at 1284.  Such testimony may be rejected if the claimant "is able to spend

18   a substantial part of his or her day performing household chores or other activities that are transferable to a

19   work setting." <u>Id.</u> at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability

20   benefits, however, and "many home activities may not be easily transferable to a work environment." <u>Id.</u>

21       While the ALJ characterizes plaintiff's daily activities as being "quite involved," plaintiff's reports

22   in this regard belie that description. <u>See</u> Tr. 76, 78-80.  In addition, although Dr. Djergaian described

23   plaintiff in mid-April 2003, as being "functionally independent" (Tr. 186), back in late May 2000, Dr.

24   Rosenbaum stated that "[f]rom an avocational standpoint, he has no significant activities secondary to his

25   symptoms." Tr. 118.  As such, the ALJ has failed to show that plaintiff engaged in daily activities to any

26   significant extent, let alone that they are easily transferable to a work environment.  As such, his reliance

27   on them to discount plaintiff's credibility was improper.

28       A determination that a claimant's complaints are "inconsistent with clinical observations" can

satisfy the clear and convincing requirement. <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998).  However, a claimant's pain testimony may not be rejected "<u>solely</u> because the degree of pain alleged is not supported by objective medical evidence." <u>Orteza v. Shalala</u>, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346-47 (9th Cir.1991) (<u>en banc</u>)) (emphasis added); <u>see also</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir.2001); <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989).  The same is true with respect to a claimant's testimony regarding other subjective complaints. <u>See</u> <u>Byrnes v. Shalala</u>, 60 F.3d 639, 641-42 (9th Cir. 1995) (finding that while <u>Bunnell</u> holding was couched in terms of subjective complaints of pain, its reasoning extended to non-pain complaints as well).

The ALJ stated in his decision that "[t]hrough the date last insured the claimant's treatment record" failed "to reflect more than minimal limitations associated with his impairments." Tr. 19.  Clearly this is not the case, however, as the ALJ himself found plaintiff had severe impairments (Tr. 17), which finding alone establishes the presence of limitations that have more than a minimal effect on plaintiff's ability to work.  <u>See</u> SSR 85-28, 1985 WL 56856 *3; <u>Smolen</u>, 80 F.3d at 1290; <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir.1988).  Further, the ALJ found those limitations to be significant enough to have resulted in a determination that plaintiff was restricted to performing only light work with certain additional postural and other non-exertional limitations. Tr. 18.  In addition, as discussed above and below, there are issues with the ALJ's evaluation of the medical evidence in the record.  The undersigned thus finds the ALJ's credibility determination to be erroneous.

V.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. <u>Id.</u>  It thus is what the claimant "can still do despite his or her limitations." <u>Id.</u>

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. <u>Id.</u>  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." <u>Id.</u>  Thus, the ALJ must consider only

those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work.  He was able to lift and/or carry a maximum of 25 pounds.  He was able to sit, stand and/or walk for 1 hour at any given time, not to exceed 4 hours for each in a fulltime [sic] 8-hour workday.  He required a sit/stand option at will.  He was not able to crawl.  He was limited to only occasional crouching, bending, kneeling, squatting and twisting.

Tr. 18.  Plaintiff argues this assessment was improper, because the ALJ failed to properly consider all of the evidence he was required to consider, including his own testimony.  As discussed above, the ALJ did not err in evaluating the medical evidence in the record plaintiff argued he did.  Also as discussed above, however, the ALJ's reasons for discounting plaintiff's credibility were not valid.  Because of this error, it cannot be said with certainty that the ALJ properly considered, and thus included in the residual functional capacity assessment, all of plaintiff's limitations.

Plaintiff further argues the above RFC assessment is internally inconsistent, pointing out that the ability to sit, stand and/or walk for one hour at a time is contradicted by the need for an option to sit/stand at will.  The undersigned again agrees.  If plaintiff requires the ability to sit/stand at will, which term was not further defined by the ALJ, the reasonable conclusion is that he cannot then be restricted to sitting or standing for any particular length of time.  Plaintiff asserts the record supports his need for such an option and his need to rest at times to relieve his pain.  The record is not so clear, however, as plaintiff makes it out to be.  For example, the only medical source to provide an opinion in this regard was Dr. Rosenbaum, who stated plaintiff needed an occupation that allowed for "postural changes." Tr. 103.  This, though, does not necessarily require an "at will" sit/stand option.  Nevertheless, the ALJ did adopt that option, although, as noted above, it created an inconsistency in the RFC assessment.

Plaintiff's argument that there is "no" substantial evidence to support the ALJ's finding that he can sit, stand and/or walk for one hour at a time, on the other hand, has no merit.  Again, the limitation to the need for an occupation that allows for "postural changes" is not necessarily incompatible with this finding, as Dr. Rosenbaum did not further define that need.  Indeed, as pointed out by plaintiff, Dr. Rosenbaum

1   also expressly found him to be capable of sitting, standing and walking for one hour at a time each in a

2   physical capacities form he completed just two weeks earlier. Tr. 153. Plaintiff attempts to discount this

3   finding by arguing it is only a "check-box" form.

4          The Ninth Circuit has expressed its preference for more individualized medical opinions. <u>See</u>

5   <u>Murray v. Heckler</u>, 722 F.2d 499, 501 (9th Cir.1983). However, in this case, plaintiff had been seen by Dr.

6   Rosenbaum several times over a period of more than four months when he completed that form. As such,

7   there was a sufficient medical basis for the findings contained therein. It is true that the ALJ misidentified

8   the form as having been completed by Rosalyn Kliot, a vocational consultant. Plaintiff, though, fails to set

9   forth the actual harm that came from such misidentification. Again, Dr. Rosenbaum's progress notes and

10  other treatment records constitute ample evidence to support that form's findings.

11         Plaintiff next points to the fact that Dr. Rosenbaum checked the boxes on the form for both light

12  and sedentary work, without explaining why he did so. <u>See</u> Tr. 153. The undersigned, however, sees no

13  error here, as it is entirely possible that Dr. Rosenbaum deemed plaintiff to be capable of performing both

14  sedentary and light work, and indicated so accordingly. Plaintiff also argues the ALJ should not have

15  relied on the form in assessing his residual functional capacity, because it provided no way for Dr.

16  Rosenbaum to indicate on it a need to shift more frequently than once per hour. Nothing in the

17  instructions for completing that form, though, prevented Dr. Rosenbaum from adding any comments

18  thereto. Indeed, the last page of the form provides a space for including further comments or "other

19  limiting conditions." Tr. 155. In other words, if Dr. Rosenbaum felt strongly at the time regarding a need

20  for the ability to shift more frequently than one time each hour, he certainly could have done so.

21         Lastly with respect to the physical capacities form completed by Dr. Rosenbaum, plaintiff argues it

22  should be discounted as well because having been completed in September 2000, it does not provide any

23  meaningful information about his functional abilities at the time of his date last insured in December 2002.

24  Plaintiff thus appears to be arguing that the Court should not take notice of any evidence in the record that

25  is dated prior to a claimant's date last insured. Such an approach, however, would be contrary to both

26  logic and the law in this area. Given that plaintiff is alleging disability since July 14, 1999, all evidence in

27  the record regarding his ability to function between that date and his date last insured is relevant, although

28  not necessarily probative, and should be considered. In addition, Dr. Rosenbaum's findings are the only

1  ones specifically concerning plaintiff's work-related capacities dated from during that period, therefore

2  making them particular relevant here.

3      The undersigned, however, does agree with plaintiff that the lifting and carrying findings

4  contained in the form completed by Dr. Rosenbaum do not by themselves support the lifting and carrying

5  capabilities adopted by the ALJ in his RFC assessment.  As plaintiff points out, while Dr. Rosenbaum

6  limited him to lifting and carrying up to 25 pounds intermittently (Tr. 154), he gave no opinion as to

7  plaintiff's ability with respect to frequent lifting and carrying, whereas light work is defined in part as

8  involving "frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

9  Although there is other opinion evidence in the record that plaintiff can perform the lifting and carrying

10 requirements of light work (see Tr. 199), the ALJ did not specifically address that evidence in his decision.

11 Thus, to the extent that the ALJ relied solely on Dr. Rosenbaum's opinion here, he erred.

12     Finally, plaintiff argues the ALJ erred in not including in the assessment of his residual functional

13 capacity a need to rest three or four times a day to relieve his pain.  In is not clear, however, that the ALJ

14 was required to include this limitation in the RFC assessment.  While plaintiff did report a need for such a

15 restriction, none of the medical opinion sources in the record have so opined.  Nevertheless, because this

16 matter is already being remanded for further administrative proceedings for the reasons set forth herein,

17 the Commissioner should re-consider this limitation as well, and whether, in light of the evidence in the

18 record as a whole, it should be included in plaintiff's residual functional capacity assessment.

19 VI.    The ALJ's Step Four Analysis

20     Plaintiff has the burden at step four of the disability evaluation process to show that he is unable to

21 return to his past relevant work. Tackett, 180 F.3d at 1098-99.  As noted above, the ALJ found plaintiff to

22 be capable of returning to his past relevant work based on the residual functional capacity with which he

23 assessed him.  Specifically, the ALJ found that based on the testimony the vocational expert provided at

24 the hearing, plaintiff was capable of returning to his past job as a retail store manager. Tr. 20.  Plaintiff

25 argues this finding is erroneous, because it was based on an improper RFC assessment.  The undersigned

26 agrees, as the vocational expert's testimony was given in response to a hypothetical question the ALJ

27 posed to the vocational expert containing substantially similar limitations. Tr. 20, 247-48.

28     An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

1    posed by the ALJ. <u>Martinez v. Heckler</u>, 807 F.2d 771, 774 (9th Cir. 1987); <u>Gallant v. Heckler</u>, 753 F.2d

2    1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

3    medical evidence to qualify as substantial evidence. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988).

4    Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported

5    by the medical record." <u>Embrey</u>, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from

6    that description those limitations he or she finds do not exist. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th

7    Cir. 2001).  Given the erroneous RFC assessment, the hypothetical question the ALJ posed was defective

8    as well, and thus the vocational expert's testimony cannot be considered reliable here.

9         Plaintiff further argues the ALJ erred in relying on the vocational expert's testimony to find him

10   capable of returning to his job as a retail store manager, because the Dictionary of Occupational Titles

11   ("DOT") classifies that job as requiring the ability to perform the full range of light level exertion – which

12   in turn requires the ability to stand and walk off and on for a total of six hours in an eight-hour workday –

13   whereas the ALJ's RFC assessment limits him to less than that. <u>See</u> SSR 83-10, 1983 WL 31251 *6; DOT

14   185-167-046.  The undersigned agrees.

15        In making disability determinations, and at both step four and step five of the sequential disability

16   evaluation process, the Commissioner relies primarily on the DOT "about the requirements of work in the

17   national economy." SSR 00-4p, 2000 WL 1898704 *2.  When relying on vocational expert testimony,

18   furthermore, the ALJ has the affirmative responsibility to ask about possible conflicts between the

19   vocational expert's testimony and information in the DOT. <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1091 (10th

20   Cir. 1999); SSR 00-4p, 2000 WL 1898704 *4.  Before relying on evidence obtained from a vocational

21   expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable

22   explanation for any discrepancy" with the DOT. <u>Haddock</u>, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704

23   *1.  The ALJ also must explain in his decision how the discrepancy or conflict was resolved. SSR 00-4p,

24   2000 WL 189704 *4.  Here, though, despite the above discrepancy, the ALJ did not ask the vocational

25   expert about it, nor did he explain how it was resolved.  Such omission constitutes error.

26        Plaintiff also argues that when the vocational expert was further asked whether a hypothetical

27   individual who is limited to lifting or carrying ten pounds and needed to sit or stand at will could perform

28   any of plaintiff's past relevant work (Tr. 248), the vocational expert testified that the retail store manager

REPORT AND RECOMMENDATION
Page - 17

1   job would be ruled out.  Because this was the only past relevant job the ALJ identified he could perform,

2   plaintiff asserts, the ALJ's step four finding cannot be upheld.  The vocational expert, however, went on to

3   clarify that her testimony depended on the definition of "at will."  Id.  When the ALJ defined that term to

4   mean the ability to sit, stand and walk up to a maximum of four hours each in a day, the vocational expert

5   then testified that the retail store manager job could be performed. Tr. 248-49.  Thus, while this testimony

6   does not eliminate the discrepancy with the need for an at will sit/stand option discussed above, it does not

7   necessarily eliminate this job on the basis of the at will condition alone.

8   VII.   Plaintiff's Step Five Argument

9          If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

10  process the ALJ must show there are a significant number of jobs in the national economy the claimant is

11  able to do. Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e).  The ALJ can do this through the

12  testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines

13  (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

14         Plaintiff argues the ALJ erred in failing to ask the vocational expert whether there were other jobs

15  existing in the national economy that he could do.  However, as noted above, if a claimant is found to be

16  not disabled at any particular step of the five-step sequential disability evaluation process, the disability

17  determination is made at that step, and the sequential evaluation process ends. See 20 C.F.R. § 404.1520.

18  The ALJ thus was not required to proceed on to step five in this case as he found plaintiff not disabled at

19  step four, even though that finding, as discussed above, ultimately was determined to be erroneous.

20  VIII.   The ALJ Was Not Required to Obtain the Testimony of a Medical Expert

21         Plaintiff argues that because there is some question regarding the proper disability onset date in this

22  case, the ALJ was required to obtain the input of a medical expert on that issue.  This argument, however,

23  is without merit.  SSR 83-20 sets forth the Commissioner's policy when establishing a claimant's onset

24  date of disability.  That ruling comes into play though only after the claimant has met the "ultimate

25  burden" of proving disability prior to the expiration of his or her insured status. Armstrong v.

26  Commissioner of the Social Security Administration, 160 F.3d 587, 590 (9th Cir. 1998).  In other words, it

27  is only when the claimant has established disability and the "record is ambiguous as to the onset date of

28  disability," does SSR 83-20 require the ALJ to "assist the claimant in creating a complete record" that

REPORT AND RECOMMENDATION
Page - 18

"forms a basis for" establishing a disability onset date. Id.  As discussed herein, a number of issues remain unresolved in this case, including the issue of plaintiff's disability status.  Accordingly, neither SSR 83-20 nor Armstrong are yet applicable here, as any disability onset date determination is premature at this time.

IX.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain here as to step three of the sequential disability evaluation process, plaintiff's residual functional capacity, and his ability to perform his past relevant work, this matter should be remanded to the Commissioner for further administrative proceedings.  If it is determined that plaintiff cannot perform his past relevant work on remand, then the Commissioner should proceed on to step five to determine whether he can perform other jobs existing in significant numbers in the national economy.

It is true that the Ninth Circuit has held that remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003).  The Court of Appeals in Connett went on to state, however, it was "not convinced" the "crediting as true" rule was mandatory. Id.  Thus, at least where findings are insufficient as to whether a claimant's testimony should be "credited as true," it appears the courts "have some flexibility in applying" that rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587,

REPORT AND RECOMMENDATION
Page - 19

593 (9th Cir. 2004) (applying "crediting as true" rule, but noting its contrary holding in Connett).[4]  Here, for the reasons set forth above, it is not clear that the ALJ would be required to find plaintiff disabled, particularly in light of the medical evidence in the record.  As such, the undersigned finds the evidence in the record as a whole is insufficient to credit plaintiff's testimony as true, and declines to do so here, or to find him to be disabled and thereby entitled to benefits on that basis.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 2, 2008**, as noted in the caption.

DATED this 9th day of April, 2008.

Karen L. Strombom
United States Magistrate Judge

---

[4]In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians. Benecke, 379 F.3d at 594.  The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. Id.  It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96.